IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| JOHN MAXWELL MONTIN, | ) | Case No. 8:14CV003142 |
| | ) | |
| Plaintiff, | ) | |
| | ) | COMPLAINT AND |
| vs. | ) | JURY TRIAL DEMAND |
| | ) | |
| Y. SCOTT MOORE, MD; | ) | 28 U.S.C. § 1331 |
| MARIO SCALORA, PH.D; | ) | 28 U.S.C. § 1332 |
| MARY PAINE, PH.D; | ) | 42 U.S.C. § 1983 |
| STEPHEN PADEN, MD; | ) | |
| LISA WOODWARD, PH.D; | ) | |
| CHIN CHUNG, MD; | ) | |
| MARCO BAQUERO, MD; | ) | |
| EUGENE OLIVETA, MD; | ) | |
| ANN EVELYN, MD; | ) | |
| DINESH KARUMANCHI, MD; | ) | |
| RAJEEV CHATURVEDI, MD; | ) | |
| JOANNE MURNEY, PH.D; | ) | |
| SHERRI BROWNING, PH.D; | ) | |
| LORRENE JURGENS, | ) | |
| NURSE PRACTITIONER; | ) | |
| MINDY ABEL,PSY.D; | ) | |
| CYNTHIA PETERSEN, | ) | |
| NURSE PRACTITIONER; | ) | |
| JAMES ALLISON, PH.D.; | ) | |
| CORRINE McCOY, | ) | |
| PROGRAM MANAGER; | ) | |
| JENNIFER CIMPL, PSY.D; | ) | |
| SHANNON BLACK, PSY.D; | ) | |
| ZAKARIA SIDDIQUI, MD; | ) | |
| ROBERTO ALVES, PSY.D; | ) | |
| KATHLEEN BARRETT, Psy.D; | ) | |
| KLAUS HARTMANN, MD; | ) | |
| | ) | |
| Defendants. | ) | |

**INTRODUCTION**

John Maxwell Montin, hereinafter Montin, brings this suit against the listed Defendants asserting both federal and state law claims. Montin is a resident of the state of Florida, "the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States" as each named Defendant is a resident of Nebraska.

**JURISDICTION AND VENUE**

This Court has diversity jurisdiction over Montin's claims pursuant to 28 U.S.C. §§ 1331 and 1332(a)(1).

This Court has jurisdiction over Montin's federal claims pursuant to 42 U.S.C. § 1983. His federal claims arise under the substantive and procedural prongs of the Due Process Clause of the Fourteenth Amendment to the United States Constitution. Montin's state claims arise under Neb. Rev. Stat. § 44-2809, Neb. Rev. Stat. § 44-2810 and Neb. Rev. Stat. § 29-3703. Montin has

timely filed a demand under the Nebraska State Tort
Claims Act.

**PARTIES**

**PLAINTIFF**

1. John Maxwell Montin, is a natural person and a
resident of the state of Florida.

**DEFENDANTS**

2. Y. Scott Moore is a natural person, a resident
of Nebraska and a licensed medical doctor.

3. Mario Scalora is a natural person, a resident of
Nebraska and a licensed psychologist.

4. Mary Paine is a natural person, a resident of
Nebraska and a licensed psychologist.

5. Stephen Paden is a natural person, a resident of
Nebraska and a licensed medical doctor.

6. Lisa Woodward is a natural person, a resident of
Nebraska and a licensed psychologist.

7. Chin Chung is a natural person, a resident of
Nebraska and a licensed medical doctor.

8. Marco Baquero is a natural person, a resident of Nebraska and a licensed medical doctor.

9. Eugene Oliveta is a natural person, a resident of Nebraska and a licensed medical doctor.

10. Ann Evelyn is a natural person, a resident of Nebraska and a licensed medical doctor.

11. Dinesh Karumanchi is a natural person, a resident of Nebraska and a licensed medical doctor.

12. Rajeev Chaturvedi is a natural person, a resident of Nebraska and a licensed medical doctor.

13. Joanne Murney is a natural person, a resident of Nebraska and a licensed medical doctor.

14. Sherri Browning is a natural person, a resident of Nebraska and a licensed psychologist.

15. Lorrene Jurgens is a natural person, a resident of Nebraska and is a nurse practitioner.

16. Mindy Abel is a natural person, a resident of Nebraska and a licensed psychologist.

17. Cynthia Petersen is a natural person, a resident of Nebraska and is a nurse practitioner.

18. James Allison is a natural person, a resident of Nebraska and a licensed psychologist.

19. Corrine McCoy is a natural person, a resident of Nebraska and was a program manager.

20. Jennifer Cimpl is a natural person, a resident of Nebraska and a licensed psychologist.

21. Shannon Black is a natural person, a resident of Nebraska and a licensed psychologist.

22. Zakaria S. Siddiqui is a natural person, a resident of Nebraska and a licensed medical doctor.

23. Roberto Alves is a natural person, a resident of Nebraska and a licensed psychologist.

24. Kathleen Barrett is a natural person, a resident of Nebraska and a licensed psychologist.

25. Klaus Hartmann is a natural person, a resident of Nebraska and a licensed medical doctor.

26. The parties listed in ¶¶ 2-25 (hereinafter referred to as Defendants) are or were employed by the Lincoln Regional Center (hereinafter LRC) to provide

continuous professional health care services at various times between August 13, 1993 and July 16, 2013.

## FACTS

27. The LRC is a state psychiatric hospital operated by the Nebraska Department of Health and Human Services. Its employees are state employees.

28. Defendants actions and omissions were taken under color and authority of state law in furtherance of the official policy, practice, and custom of the LRC and with a deliberate indifference to Montin's federal constitutional rights and to his state law rights.

29. Montin was committed to the LRC on August 13, 1993 by the Hays County (Nebraska) District Court for an evaluation after a jury found him to be not responsible by reason of insanity (hereinafter NRRI) on two felony charges (false imprisonment and use of a weapon) on August 11, 1993. Montin was acquitted on two other charges (attempted murder and use of a weapon). Twenty two other charges were dismissed.

30. On January 18, 1994, after a hearing, the Hays County District Court committed Montin to the LRC.

31. Montin was found "no longer dangerous to himself or others by reason of mental illness or defect and will not be so dangerous in the foreseeable future" by order dated July 16, 2013. He was then "unconditionally released from court-ordered treatment."

32. A bill of exceptions including the preliminary proceedings, arraignment, hearings on motions, jury trial, and hearing on treatment plan concerning the original criminal charges was prepared and filed in the Hays County District Court on February 26, 1996.

33. Between August 13, 1993 and July 16, 2013, Defendants were jointly and severally responsible for continuously rendering professional health care services to Montin consistent with LRC policies, practices and custom.

34. Among other duties, the Defendants were required to conduct regular forensic evaluations,

provide psychiatric updates, administer psychological testing, formulate a master treatment plan, implement the treatment plan, monitor the treatment plan, provide necessary care and treatment, and provide annual court reports.

35. Forensic evaluations were made with participation by the named Defendants. Psychological testing was performed by Defendants Mario Scalora, Mary Paine, Lisa Woodward, Joanne Mirney, Sherri Browning, Mindy Abel, James Allison, Jennifer Cimpl, Shannon Black, Roberto Alves, and Kathleen Barrett.

36. Annual court reports were prepared and submitted to the Hays County District Court as follows:

1994 by Louis Martin;

1995 no report;

1996 by Defendant Lisa Woodward;

1997 by Defendant Stephen Paden;

1998 by Defendant Ann Evelyn;

1999 no report;

2000 by Louis Martin and Defendant Y. Scott Moore;

2001 by Louis Martin;

2002 by Louis Martin;

2003 by Louis Martin;

2004 no report;

2005 by Louis Martin;

2006 by Louis Martin;

2007 by Defendant Y. Scott Moore;

2008 by Defendant Klaus Hartmann;

2009 no report;

2010 by Defendant Klaus Hartmann;

2011 by Defendants Klaus Hartmann and Y. Scott Moore;

2012 no report; and

2013 by Defendant Klaus Hartmann.

    37. Psychiatric Updates were prepared by Defendant
Chin Chung; Louis Martin; Defendant Lorrene Jurgins;
and Edward Kelly.

    38. Master Treatment Plans or Treatment Plan
Reviews were prepared by Louis Martin; Defendant Chin
Chung; Defendant Marco Baquero; Defendant Lisa
Woodward; Defendant Stephen Paden; Defendant Mario

Scalora; Defendant Ann Evelyn; Defendant Y. Scott Moore; Defendant Joanne Mirney; Defendant Corrine McCoy; Defendant Lorrene Jurgens; Defendant Dinesh Karumanchi; Defendant Cynthia Petersen; Defendant Rajeev Chaturvedi; Defendant Shannon Black; Defendant Zakaria Siddiqui; Defendant Sherri Browning; Defendant Roberto Alves; Defendant Jennifer Cimpl; and Defendant Kathleen Barrett.

39. Defendants jointly and individually, deliberately or recklessly failed to use the ordinary and reasonable care, skill, and knowledge ordinarily possessed and used under like circumstances by members of his or her profession when engaged in a similar practice in their or similar localities to perform forensic evaluations, administer psychological testing (or to score the testing), prepare annual reports, prepare psychiatric updates, review or prepare master treatment plans, monitor the implementation of the treatment plans, and provide appropriate health care to Montin.

40. Defendants failed to determine that Plaintiff was not mentally ill, did not suffer from a present condition requiring treatment, and did not manifest symptoms of illness as early as August 13, 1993 and they failed to notice throughout his years of being unnecessarily restrained at the LRC that he did not satisfy the criteria for restraint. Defendants failed to properly reevaluate Plaintiff annually or when his behavior warranted reconsideration.

41. Defendants individually or jointly refused to reconsider their original assumptions despite substantial intervening evidence that the original forensic evaluation and that each succeeding assessment was performed in a deficient manner, had relied upon false information and had reached an unsupportable result.

42. A series of significant events over the years should have but did not trigger a reevaluation of Montin by Defendants.

43. Defendants persistently relied on a false factual belief that Montin had been found not responsible by reason of insanity of attempted murder and use of a weapon in connection with that charge. Montin was in fact found not guilty of these charges. Montin persistently disputed the nature of the charges for which he was found not responsible by reason of insanity. Resolution of that factual dispute required no more than a simple telephone call to the Hays County District Court Clerk. No Defendant made that call and no Defendant asked a social worker or other LRC employee to make that call.

44. The initial psychological evaluation openly relied upon inconsistent findings to manufacture or exaggerate a mental illness finding. No Defendant reviewed that original report or if they did they did not see the defects which were plainly there.

45. Montin's behavior was inconsistent with the Defendants' assumptions and original evaluation. Montin's focus shifted from concern about one issue to

another, which is directly contrary to the results predicted by the incorrect original evaluation. And Montin's condition did not deteriorate which is directly contrary to the results predicted by the incorrect original evaluation. Defendants did not notice or failed to consider the significance of Montin's behavior over the years of his confinement.

46. The trial court transcript was available from before Montin's first trip to the LRC. Defendants made no effort to consult this readily available public record. No Defendant asked any LRC staff person to consult the court transcript.

47. The official bill of exceptions became available February 26, 1996. Defendants made no effort to consult this readily available public record until Defendant Klaus Hartmann obtained and read it in 2012. When Klaus Hartmann reviewed the bill of exceptions, he promptly revised his forensic view of Montin.

48. In 1998, Montin obtained a complete reevaluation subject to the requirement that false

information relied upon up to that time be disregarded. Defendant Scalora then performed a psychological reevaluation. During this forensic reevaluation Defendant Scalora, knowingly or with reckless disregard for the truth, continued to rely upon false information in the LRC files. Defendant Scalora failed to use the ordinary and reasonable care, skill, and knowledge ordinarily possessed and used under like circumstances by members of his profession engaged in a similar practice in their or similar localities in doing this reevaluation.

49. At various times between August 13, 1993 and July 16, 2013, Montin sought relief from the state and federal courts. Defendants treated these efforts as symptoms. Defendants imposed adverse behavioral modification consequences upon Montin when he refused to abandon these efforts to invoke his legal rights.

## MALPRACTICE CLAIM

50. Plaintiff incorporates herein by reference paragraphs 1 through 49 of this Complaint as though fully set forth here.

51. The forensic evaluations, court reports, psychiatric updates and master treatment plans or treatment plan reviews, when made, failed to meet the standard of care and failed to meet the professional standards in their respective disciplines.

52. Failure by Defendants to apply the ordinary and reasonable care, skill, and knowledge ordinarily possessed and used under like circumstances by members of his or her profession engaged in a similar practice in their or similar localities resulted in harm to Montin, specifically in that Montin was incorrectly labeled as being mentally ill; he was subjected to unnecessary and inappropriate treatment; he was subjected to unnecessary bodily restraint; his freedom of movement was unnecessarily restrained; he suffered lost employment opportunities and lost wages; his

everyday life activities, including family relations, social contacts, work options, economic independence, educational advancement and cultural enrichment were severely diminished or lost; he suffered stigma, stress, anxiety, and other mental and emotional harm; and he unnecessarily lost opportunities to be with family and friends.

53. Defendants, acting with deliberate indifference to the rights of Montin, relied upon their prior defective reports, thereby compounding earlier errors.

54. Defendants were under a continuing duty not less often than annually to determine and report whether Montin was mentally ill.

55. When Montin was no longer mentally ill, Defendants were under a duty to report that to the Hays County District Court so that Montin could be discharged.

56. Defendants were under a continuing duty not less often than annually to determine and report whether Montin was dangerous.

57. When Montin was no longer dangerous, Defendants were under a duty to report that to the Hays County District Court so that Montin could be discharged.

58. In making the forensic evaluations, annual court reports, psychiatric updates and master treatment plans, treatment plan reviews, and in maintaining custody over Montin and in providing treatment to Montin, Defendants were under a duty to investigate and obtain reasonably accurate and reliable information. Defendants failed to use ordinary and reasonable care, skill, and knowledge in gathering and relying upon their information.

59. Defendants, knowingly or with reckless disregard for the truth, relied upon false information with the result that they repeatedly provided substandard care to Montin and repeatedly provided misleading and false reports to the Hays County District Court.

60. Montin repeatedly asked Defendants to revise their opinions and repeatedly informed Defendants that

the information which they were relying upon was incorrect. Instead of reviewing readily available sources, Defendants improperly used Montin's efforts to correct the record as evidence of mental illness.

61. Defendants failed to use ordinary and reasonable care, skill, and knowledge in that they failed to use appropriate forensic tools.

62. Defendants, falling below the standard of ordinary and reasonable care, skill, and knowledge, failed to correctly score or interpret the tests they did administer.

63. Defendants failed to use ordinary and reasonable care, skill, and knowledge by not correctly considering reliable behavioral information in their possession. Montin consistently failed to behave in a manner consistent with the erroneous conclusions reached or repeated by defendants.

64. When any of the Defendants expressed reservations about their conclusions, those

reservations were ignored by themselves and by the other Defendants.

65. Defendants manufactured a set of professionally inappropriate requirements for Montin to meet, such as requiring that he admit to historical information which was not true; admit he was mentally ill; and agree to take dangerous psychotropic medications which they did not themselves believe would have any beneficial effect.

66. When Montin declined to admit untrue historical information, admit that he was mentally ill, or agree to take dangerous and unnecessary drugs, Defendants falsely converted his resistance into improper and incorrect conclusions as to his mental health.

67. Defendants, knowing them to be false or with reckless disregard for the truth, submitted false and misleading reports to the Hays County District Court.

68. Defendants were indifferent to the necessary consequence of misleading the Hays County District Court,in that doing so would subject Montin to

unnecessary bodily restraint, including confinement in a secure psychiatric facility when a less restrictive treatment alternative or unconditional discharge was available or justified by the truth.

69. Over the years, Defendants have prepared master treatment plans, master treatment plan reviews, and annual court reports by simply copying conclusions reached by themselves or by other Defendants without exercising professional judgment themselves. Sometimes Defendants even noted that the behavioral evidence and the content of Montin's communications with ward staff and peers contradicted the conclusions they were repeating. Defendants failed to conduct appropriate evaluations again and again.

70. The defective forensic evaluation process used by the Defendants proximately caused the Hays County District Court to accept false and misleading recommendations which resulted in continued unnecessary bodily restraint for Montin.

71.  When forced to reevaluate Montin in 1998, Defendants knowingly relied upon the same incorrect information, failed to exercise professional judgment, failed to reconcile contradictory test results, and proximately caused additional unnecessary bodily restraint. Defendant Scalora knew that the information he was relying upon was false.

72. Defendants failed to consult the actual trial record after it became available and failed to revise their original conclusions in violation of professional standards.

73. During the entire period from August 13, 1993 until July 16, 2013, Defendants provided continuous, inappropriate treatment unnecessarily subjecting Montin to involuntary inpatient mental health warehousing under the guise of treatment.

74. While purportedly rendering professional health care services to Montin, Defendants continuously, individually or jointly failed to use the ordinary and reasonable care, skill, and knowledge ordinarily

possessed and used under like circumstances by membe rs of their profession engaged in a similar practice in their or similar localities.

75. As a direct and proximate result of the actions of the Defendants, acting jointly and severally, Montin was injured and suffered damages consisting of being incorrectly labeled as being mentally ill; he was subjected to unnecessary and inappropriate treatment; he was subjected to unnecessary bodily restraint; his freedom of movement was unnecessarily restrained; h is suffered lost employment opportunities and lost wages ; his everyday life activities, including family relations, social contacts, work options, economic independence, educational advancement and cultural enrichment were severely diminished or lost; he suffered stigma, stress, anxiety, and other mental and emotional harm; and he unnecessarily lost opportunities to be with family and friends.

## CIVIL RIGHTS CLAIMS

### A. Unnecessary Bodily Restraint

76. Plaintiff incorporates herein by reference paragraphs 1 through 75 of this Complaint as though fully set forth here.

77. Defendants, acting under color of any statute, regulation, custom, or usage of the State of Nebraska, subjected Montin, or caused him to be subjected to the deprivation of his rights, privileges and immunities secured by the Constitution and laws of the United States, specifically subjecting him to unnecessary bodily restraint in violation of the Due Process Clause of the Fourteenth Amendment to the Constitution of the United States.

78. The pattern of creating and submitting unreliable forensic evaluations and reports is the product of state statute, institutional regulation, policy or custom.

79. Defendants, individually and jointly, demonstrated a deliberate indifference to the needs and

rights of Montin and have proximately caused him injury, including loss of freedom to travel, subjected him to being exposed in a false and harmful light and to public ignominy, damaged his reputation and financial standing, prevented him from gainful employment, denied him access to his family, friends and associates, denied him lost wages and subjected him to unnecessary bodily restraint.

## B. Truthful Disclosure Claim

80. Plaintiff incorporates herein by reference paragraphs 1 through 79 of this Complaint as though fully set forth here.

81. Montin has a constitutional right to have state agents tell the Court the truth when his liberty is at issue.

82. Defendants, acting under color of law, individually, jointly and severally filed annual reports containing false information knowing them to be false or in reckless disregard for their truth.

83. If the false information is redacted from the annual reports, there remained insufficient information to warrant a judicial conclusion that he remained mentally ill or that he remained dangerous. But for the false information, Montin would have been discharged earlier than he was.

84. Defendants' creation and delivery of false information to the state court, knowing it to be false or with reckless disregard for its falsity, violated Montin's right to the Due Process of law as provided in the Fourteenth Amendment to the United States Constitution.

85. Defendants demonstrated a deliberate indifference to the needs and rights of Montin and have proximately caused him injury, including loss of freedom to travel, subjected him to being exposed in a false and harmful light and to public ignominy, damaged his reputation and financial standing, prevented him from gainful employment, denied him access to his

family, friends and associates, denied him lost wages and caused unnecessary bodily restraint.

### C. Access to Court or Retaliation Claim

86. Plaintiff incorporates herein by reference paragraphs 1 through 85 of this Complaint as though fully set forth here.

87. Throughout his confinement, Montin has sought relief in state and federal courts. Defendants have used his attempts to seek redress in the courts as evidence of his mental illness.

88. Defendant McCoy deliberately or in reckless disregard of Montin's constitution right of access to the courts, imposed behavioral restrictions in an attempt to force Montin to abandon his legal efforts.

89. Montin suffered additional restrictions on his liberty when he continued to seek relief from the courts.

90. As a direct and proximate result of the actions of the Defendants jointly and severally, Montin has been injured and has suffered damages.

## MONETARY DAMAGE CLAIMS

91. Defendants, acting jointly and severally, as set forth above, have directly and proximately caused Montin to lose wages amounting to at least $760,000.00. In addition, he has lost the opportunity to create a retirement account or to accumulate funds for that purpose. He has lost the interest which would accrue from this income.

92. As a direct and proximate result of the actions of the Defendants acting jointly and severally, Montin has suffered unnecessary bodily restraint beginning on August 13, 1993 and continuing until July 16, 2013.

93. As a direct and proximate result of the joint and several actions of the Defendants, Montin was incorrectly labeled as being mentally ill; he was subjected to unnecessary and inappropriate treatment; he was subjected to unnecessary bodily restraint; his freedom of movement was unnecessarily restrained; he suffered lost employment opportunities and lost wages; his everyday life activities, including family

relations, social contacts, work options, economic independence, educational advancement and cultural enrichment were severely diminished or lost; he suffered stigma, stress, anxiety, and other mental and emotional harm; and he unnecessarily lost opportunities to be with family and friends.

94. Montin has lost the opportunity to marry and to establish a family. Montin was not permitted to attend his mother's funeral.

95. These actions by the Defendants damaged Montin in the amount of $22,000,000.

## REQUEST FOR PUNITIVE DAMAGES

96. Montin alleges that his constitutional claims were done deliberately or with reckless disregard for his established constitutional rights. Accordingly, Montin asks for an award of punitive damages in the amount of $10,000,000.00.

## PRAYER FOR RELIEF

97. Montin seeks a judicial determination that his rights have been violated as set out above. Montin

seeks judgment against each Defendant, individually and jointly.

98. Montin has been harmed by the malpractice and constitutional wrongs of the Defendants, acting individually and jointly. He seeks a MONEY judgment in the amount of $22,760,000.00 against the named defendants individually, jointly or separately.

99. Montin seeks punitive damages in the amount of $10,000,000.

100. Montin seeks judgment for his costs and litigation expenses, including expert witness fees.

101. Montin seeks reasonable attorney fees.

Respectfully submitted,

John Maxwell Montin
Plaintiff

/s/ Michael D. Gooch
_____
Michael D. Gooch 15273
Attorney for Plaintiff
1004 South 131st Avenue
Omaha, NE 68154
(402) 333-0722
mdgooch@cox.net

**Request for Trial in Lincoln**

Montin seeks trial in Lincoln, Nebraska.

**Demand for Jury Trial**

Montin makes demand for trial by jury.